IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| JAMES LYNCH AND | § | |
| SHANNON LYNCH, individually | § | |
| and on behalf of, PARKER LYNCH | § | |
| AND HIS ESTATE | § | |
|    *Plaintiffs* | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 6:21-cv-130 |
| | § | |
| JAMES JIM TAMES D/B/A BLACK | § | |
| DIAMOND BODY ARMOR, | § | |
| BLACK DIAMOND JA LC., | § | |
| LEECO STEEL, LLC., | § | |
| D & F EQUIPMENT SALES, INC., | § | |
| ARKANSAS MACHINE WORKS, | § | |
| INC., TUFF COAT LLC D/B/A/ | § | |
| BULLET LINER | § | |
| NWA, LLC., AND NUCOR CORP. | § | JURY REQUESTED |
|    *Defendants* | § | |

## COMPLAINT AND JURY DEMAND

James Lynch and Shannon Lynch, individually and on behalf of Parker Lynch and His Estate ("Plaintiffs") file this, their Original Complaint and Jury Demand, complaining of Defendant James Jim Tames, d/b/a Black Diamond Body Armor, Black Diamond JA LC., Leeco Steel, LLC, D & F Equipment Sales, Inc., Arkansas Machine Works, Inc., Tuff Coat LLC D/B/A/ Bullet Liner NWA, LLC, and Nucor Corporation (collectively "Defendants"), and in support thereof would respectfully show the Court the following:

### I.      PARTIES

1.     Plaintiff, James Lynch, is an individual residing in the State of Arizona.

2.     Plaintiff, Shannon Lynch, Individually and on behalf of Parker Lynch and His Estate, is an individual residing in the State of Arizona.

3.      Defendant, James Jim Tames D/B/A Black Diamond Body Armor, is a Texas resident and may be served at his last known address of 10117 China Creek Dr., Waco, Texas 76708, or wherever he may be found or upon whom ever may legally accept service on his behalf.

4.      Defendant, Black Diamond JA LC, is a Limited Company registered in the State of Texas and may be served through their registered agent, Anastasia Johnson, at 10117 China Creek Dr., Waco, Texas 76708.

5.      Defendant, Leeco Steel, LLC, is a Limited Liability Company incorporated in Illinois with its principal place of business in Illinois, registered to do business in the state of Texas, and may be served through their registered agent, Corporation Services Company d/b/a CSC-Lawyers Incorporating Services Company, at 211 East 7th Street, Suite 620, Austin, Texas 78701.

6.      Defendant, D & F Equipment Sales, INC, is a For-Profit Corporation with its principle place of business in Alabama, registered to do business in the state of Texas, and may be served through their registered agent, Corporation Services Company d/b/a CSC-Lawyers Incorporating Services Company, at 211 East 7th Street, Suite 620, Austin, Texas 78701.

7.      Defendant, Arkansas Machine Works, INC., is a For-Profit Corporation, with its principle place of business in Arkansas, and is not registered to Transact Business in Texas. Defendant Arkansas Machine Works, INC. does not maintain a registered agent in Texas. TEX. BUS. ORGS. CODE ANN. § 5.251.  In accordance with Rule 4(e)(1) of the Federal Rules of Civil Procedure, service may be effected by serving the Texas Secretary of State. FED. R. CIV. P. 4(e)(1); TEX. BUS. ORGS. CODE ANN. § 5.252.

8.      Defendant, Tuff Coat LLC d/b/a/ Bullet Liner NWA, LLC, is a Domestic Limited Liability Company, registered in Arkansas, and is not registered to Transact Business in Texas. Defendant Tuff Coat LLC d/b/a/ Bullet Liner NWA, LLC does not maintain a registered agent in Texas. TEX. BUS. ORGS. CODE ANN. § 5.251.  In accordance with Rule 4(e)(1) of the Federal Rules of Civil Procedure, service may be effected by serving the Texas Secretary of State. FED. R. CIV. P. 4(e)(1); TEX. BUS. ORGS. CODE ANN. § 5.252.

9.      Defendant, Nucor Corporation, is a For-Profit Corporation, incorporated in Delaware and with its principal place of business in the state of North Carolina. Defendant Nucor Corporation is registered in the state of Texas and may be served through its registered agent, CT Corp. Systems, at 1999 Bryan St. Ste. 900, Dallas, TX 75201.

## II.      <u>SUBJECT MATTER JURISDICTION</u>

10.      Plaintiffs James Lynch and Shannon Lynch are and were resident of the State of Arizona at all times relevant to this case.

11.      Defendant James Jim Tames, D/B/A Black Diamond Body Armor is and was a resident of the state of Texas at all times relevant to this case.

12.      Defendant Black Diamond JA LC is and was a business entity with its principal place of business in the state of Texas at all times relevant to this case.

13.      Defendant Leeco Steel, LLC is and was a Limited Liability Company incorporated in Illinois with its principal place of business in Illinois at all times relevant to this case.

14.      Defendant D & F Equipment Sales, INC, is and was a For-Profit Corporation with its principle place of business in Alabama at all times relevant to this case.

3

15.     Defendant Arkansas Machine Works, INC. is and was incorporated under the laws of Arkansas and has its principal place of business in Arkansas at all times relevant to this case.

16.     Defendant, TUFF COAT LLC d/b/a/ Bullet Liner NWA, LLC, is and was incorporated under the laws of Arkansas and has its principal place of business in Arkansas at all times relevant to this case.

17.     Defendant Nucor Corporation, is and was incorporated under the laws of Delaware and has its principal place of business in North Carolina at all times relevant to this case.

18.     The amount in controversy in this case exceeds $1,000,000.

19.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 because complete diversity of citizenship exists between the parties and the amount in controversy is greater than $75,000.

### III.     PERSONAL JURISDICTION

20.     Defendant James Jim Tames, D/B/A Black Diamond Body Armor is and was a resident of the state of Texas at all times relevant to this case.

21.     Defendant Black Diamond JA LC is and was a business entity with its principal place of business in the state of Texas at all times relevant to this case.

22.     Defendant Leeco Steel designed, marketed and sold the MIL-A-46100 steel used by Black Diamond Body Armor to make the body armor made the basis of this lawsuit. Defendant knew at all times during the design, manufacture and sale of the MIL-A-46100 steel that the products in question would travel among and through each and every state, including Texas, and Defendant should have reasonably anticipated the need to answer suit arising out of the manufacture, design, and sale of those MIL-A-46100 steel sheets in

Texas. Defendant's contacts with the State of Texas are systematic, ongoing, and sufficient to support the proper exercise of personal jurisdiction over them.

23.     Additionally, and in the alternative, Defendant Leeco Steel purposefully availed itself to business dealings in the State of Texas and maintains business and manufacturing locations in the state of Texas. Therefore, Leeco Steel could reasonably expect to respond to complaints therein. Defendant's purposeful availment of the benefit and protection of the laws of Texas is sufficient to support proper exercise of personal jurisdiction over Defendant.

24.     Defendant D & F Equipment Sales, INC sold and performed steel cutting services through its subsidiary Arkansas Machine Works INC for Black Diamond Body Armor to make the body armor made the basis of this lawsuit.  Defendant knew at all times during the performance of services that the products in question would travel among and through each and every state, including Texas. Defendant should have reasonably anticipated the need to answer suit arising out of their many business dealings within the State of Texas. Defendant's contacts with the State of Texas are systematic, ongoing, and sufficient to support the proper exercise of personal jurisdiction over them.

25.     Additionally, and in the alternative, Defendant D & F Equipment Sales, INC purposefully availed itself to business dealings in the State of Texas and could reasonably expect to respond to complaints therein. Defendant's purposeful availment of the benefit and protection of the laws of Texas is sufficient to support proper exercise of personal jurisdiction over Defendant.

26.     Defendant Arkansas Machine Works INC. sold and performed steel cutting services for Black Diamond Body Armor to make the body armor made the basis of this

lawsuit.  Defendant knew at all times during the performance of services that the products in question would travel among and through each and every state, including Texas. Defendant should have reasonably anticipated the need to answer suit arising out of their many business dealings within the State of Texas. Defendant's contacts with the State of Texas are systematic, ongoing, and sufficient to support the proper exercise of personal jurisdiction over them.

27.     Additionally, and in the alternative, Defendant Arkansas Machine Works INC. purposefully availed itself to business dealings in the State of Texas and could reasonably expect to respond to complaints therein. Defendant's purposeful availment of the benefit and protection of the laws of Texas is sufficient to support proper exercise of personal jurisdiction over Defendant.

28.     Defendant TUFF COAT LLC d/b/a/ Bullet Liner NWA, LLC sold and performed rubber liner spraying services for Black Diamond Body Armor to make the body armor made the basis of this lawsuit.  Defendant knew at all times during the performance of services that the products in question would travel among and through each and every state, including Texas. Defendant should have reasonably anticipated the need to answer suit arising out of their many business dealings within the State of Texas. Defendant's contacts with the State of Texas are systematic, ongoing, and sufficient to support the proper exercise of personal jurisdiction over them.

29.     Additionally, and in the alternative, Defendant TUFF COAT LLC d/b/a/ Bullet Liner NWA, LLC purposefully availed itself to business dealings in the State of Texas and could reasonably expect to respond to complaints therein. Defendant's purposeful

availment of the benefit and protection of the laws of Texas is sufficient to support proper exercise of personal jurisdiction over Defendant.

30.     Defendant Nucor Corporation designed, marketed and sold the MIL-A-46100 steel used by Black Diamond Body Armor to make the body armor made the basis of this lawsuit.  Defendant knew at all times during the design, manufacture and sale of the MIL-A-46100 steel that the products in question would travel among and through each and every state, including Texas, and Defendant should have reasonably anticipated the need to answer suit arising out of the manufacture, design, and sale of those MIL-A-46100 steel sheets in Texas. Defendant's contacts with the State of Texas are systematic, ongoing, and sufficient to support the proper exercise of personal jurisdiction over them.

31.     Additionally, and in the alternative, Defendant Nucor Corporation purposefully availed itself to business dealings in the State of Texas and maintains business and manufacturing locations in the state of Texas. Therefore, Nucor Corporation could reasonably expect to respond to complaints therein. Defendant's purposeful availment of the benefit and protection of the laws of Texas is sufficient to support proper exercise of personal jurisdiction over Defendant.

## IV.    VENUE

32.     Venue is proper in the Western District of Texas, Waco Division, because it is the Judicial District in which a substantial part of the events or omissions giving rise to the claim occurred. The advertisement, order, sale and fulfillment of the body armor giving rise to the claim all occurred within this Judicial District and therefore Venue is proper under 28 U.S.C. § 1391(b)(2). Alternatively, McClennan County, a county falling within the Western District of Texas, Waco Division, is the county of the Defendant, James Jim

Tames d/b/a Black Diamond Body Armor residence during the occurrence of the events giving rise to this lawsuit, and it is the County wherein James Jim Tames d/b/a Black Diamond Body Armor and/or Black Diamond JA LC's, principal place of business is located. And therefore Defendant, James Jim Tames d/b/a Black Diamond Body Armor and Black Diamond JA LLC venue is proper with respect to the action. 28 U.S.C. § 1391(b)(3).

## V.   FACTS

33.     On or about October, 6 2017, James Jim Tames, Black Diamond Body Armor, and/or Black Diamond JA, LC., ("BDBA") purchased six sheets of ¼ x 96 x 48 MIL-A-46100 steel from Leeco Steel, LLC., ("Leeco"), The MIL-A-46100 steel sold to BDBA by Leeco was sourced from Nucor Corporation ("Nucor").

34.     Upon information and belief, Nucor expressly warranted their MIL-A-46100 steel sold to Leeco as being manufactured to MIL-DTL-46100E specifications, with a Brinell hardness number ("BHN") range of 497-523. The highest-performing U.S. steel alloys for armor-piercing bullet protection are manufactured to MIL-DTL-46100E standards, as high-hardness armor with a hardness range of 477–534 BHN.

35.     Upon further information and belief, Leeco advertised their MIL-A-46100 steel as being "military grade steel which exhibits high hardness" and "is approved for use within the Department of the Army." Leeco warranted its MIL-A-46100 steel as "…armor fit for the particular purpose of stopping high velocity projectiles, such as sniper fire." Leeco further warranted that their MIL-A-46100 steel could be "formed within certain ductile limitations;" however, no such limitations were provided by Leeco to any other defendants in this lawsuit.

36.    Shortly after BDBA purchased the above-mentioned MIL-A-46100 Steel, Leeco shipped said steel to Arkansas Machine Works, a subsidiary of D & F Equipment Sales, Inc., ("AMW"). Upon information and belief, AMW took possession of the MIL-A-46100 Steel and used a plasma cutter and steelworker machine to cut out (from a sheet of Leeco's MIL-A-46100 steel) the Level 4, 10 x 12, Shooters Cut, body armor made the basis of this lawsuit. The body armor cut-outs were then sent to Tuff Coat LLC D/B/A/ Bullet Liner NWA, LLC, ("BLNWA") to receive a final spray coating, deigned to stop spalling or metal fragmentation entering the body in the event the armor failed. After receiving the final coating, the body armor was shipped to BDBA for sale and distribution. When the body armor arrived at BDBA, the MIL-A-46100 steel was in substantially the same condition as it was when it was placed into the stream of commerce by Leeco.

37.    On or about January 26, 2019 Parker Lynch ordered body armor by phone from Jim Tames who was domiciled and operating BDBA in the state of Texas at the time of the order, purchase and the shipping of the body armor in question. The body armor purchased was the Level 4, 10 x 12, Shooters Cut, made the basis of this lawsuit. The warranty on the body armor warranted that MIL-A-46100 steel could stop, among other rounds, a military grade 5.56 x 45 M855 bullet, also known as a green tip armor piercing bullet.

38.    On or about February 11, 2019, Parker Lynch received by mail the body armor he purchased from BDBA. Relying on the warranties from Nucor, Leeco and BDBA, Parker Lynch and two friends went to the countryside to test the body armor. They first shot a back panel of the MIL-A-46100 steel body armor with a .223 red tip armor piercing bullet. The .223 bullet is commonly known as the civil version of a 5.56 bullet, but the .223 is significantly weaker than its nearly identical counterpart.

39.     The first bullet shot did not penetrate the back-panel body armor. Only after seeing the back-panel stop the .223 bullets did Parker Lynch and friends decided to use the front-panel for its intended purpose. Parker Lynch put the MIL-A-46100 steel body armor and carrier-vest on. Parker Lynch's friend shot him in the front-panel of the MIL-A-46100 steel body armor with a .223 FMJ (Full Metal Jacket) bullet, a nearly identical bullet to the one shot at the back-panel. Only this time the bullet shot ripped straight through the MIL-A-46100 steel body armor front-panel. The bullet traveled through Parker Lynch's body striking his liver. Emergency personal were called to the scene but were unable to save Parker Lynch who died in agony and pain from his injuries. But for the failure of the MIL-A-46100 steel and body armor, Parker Lynch would not have lost his life.

## VI.     INCORPORATION OF FACTS

40.     The above facts as laid out in the "FACTUAL BACKGROUND" of this pleading are hereby incorporated as to each cause of action, and every section below, and to any and every supplemented pleading(s) on file with this Court.

## VII.     CAUSES OF ACTION AGAINST LEECO STEEL, LLC.,

A. STRICT LIABILITY

41.     This is a product defect case with respect to the quality, grade, and strength of the MIL-A-46100 steel.

42.     The MIL-A-46100 steel was designed, manufactured, marketed and sold by Leeco for the specific purpose of stopping high speed projectiles, specifically .556/.223 bullets, in a defective and unreasonably dangerous condition to an extent beyond which would be contemplated by an ordinary user of the MIL-A-46100 steel. The defective and

unreasonably dangerous condition of the MIL-A-46100 steel was a producing cause of the damages and injuries sustained by Plaintiffs, thus rendering Leeco strictly liable.

43.     The MIL-A-46100 steel was unreasonably dangerous as designed, manufactured, marketed, and sold, taking into consideration the utility of the MIL-DTL-46100 steel, and the risk involved in its foreseeable use.

44.     The unreasonably dangerous design, manufacturing, marketing, and sale of the MIL-DTL-46100 steel was a producing cause of the damages and injuries sustained by Plaintiffs.

45.     The acts and/or omissions of Defendant Leeco were negligent in the following particulars:

46.     a. Design, manufacturing, marketing, and selling MIL-A-46100 steel that failed to comply with local, state, and federal regulations.

47.     b. Designing, manufacturing, marketing and selling MIL-A-46100 steel that failed to comply with industry standards.

48.     c. Designing, manufacturing, marketing, and selling MIL-A-46100 steel that was unreasonably dangerous.

49.     The MIL-A-46100 steel was in substantially the same condition at the time of the incident as it was when it was placed into the stream of commerce.

50.     At the time the MIL-A-46100 steel left the control of Leeco, there were safer alternative design(s). The risk, danger, and severity of the damages to Plaintiffs could have been avoided, reduced, or prevented had the safer alternative design(s) been adopted or used.

51.     At the time of the design, manufacturing, marketing, or the sale of the MIL-A-46100 steel, adoption or use of a safer alternative design(s) were reasonably or feasibly available to Leeco. Leeco did not adopt or use the safer alternative design(s). Leeco's failure to adopt or use a safer alternative design(s) was reckless, willful, wanton, heedless, and in flagrant disregard to public safety. Leeco's negligence and gross negligence was a proximate cause of the damages and injuries sustained by Plaintiffs. As a result, Plaintiffs are entitled to recover actual and punitive damages and/or exemplary damages in an amount to be determined by the trier of fact.

B. STRICT LIABILITY: MANUFACTURING DEFECT

52.     The MIL-A-46100 steel worn by the now deceased was originally designed, manufactured, and sold by Leeco. At the time the MIL-A-46100 steel was sold, Leeco was in the business of designing, manufacturing, selling, and/or otherwise placing MIL-A-46100 steel into the stream of commerce for the purpose of being used as body armor.

53.     The MIL-A-46100 steel and body armor reached Plaintiffs in the condition expected and intended by Leeco. Plaintiffs used the MIL-A-46100 steel and body armor for its intended and foreseeable purpose. When the MIL-A-46100 steel left the control of Leeco, defects in their manufacturing rendered the MIL-A-46100 steel defective and unreasonably dangerous in that, among other things, the MIL-A-46100 steel was prone to fail at stopping high speed bullets upon impact, specifically .556/.223 bullets.

54.     The Defective manufacturing of the MIL-A-46100 steel directly and proximately caused the damages to Plaintiffs.

C. STRICT LIABILITY: MARKETING DEFECT/FAILURE TO WARN

55.     Defendant Leeco failed to give adequate and proper warnings and instructions regarding the dangers of the MIL-A-46100 steel which rendered the MIL-A-46100 steel defective and unreasonably dangerous and was a producing cause of the damages and injuries sustained by Plaintiffs. Specifically, Defendants' failure to warn of the ductile limitations of the MIL-A-46100 steel was a proximate cause of the damages and injuries sustained by Plaintiffs.

D. NEGLIGENCE

56.     Defendant, Leeco, committed acts of omission and commission, which collectively and severally constituted negligence. Leeco had a duty to exercise ordinary care, meaning that degree of care that would be used by a company or ordinary prudence under the same or similar circumstances, and Leeco breached that duty. Specifically, Leeco breached their duty in one or more of the following ways:

a.  Failing to properly design the MIL-A-46100 steel;

b.  Failing to properly manufacture the MIL-A-46100 steel;

c.  Failing to properly market the MIL-A-46100 steel;

d.  Failing to adequately test the MIL-A-46100 steel.

e.  Failing to adequately warn of the ductile limitations of the MIL-A-46100 steel.

57.     These breaches, among others, constituted negligence. Such negligence was a proximate cause of the occurrence in question and of the damages and injuries sustained by Plaintiffs.

E. GROSS NEGLIGENCE

58.     Plaintiffs allege that all acts, conduct, and omissions on the part of Defendant Leeco, taken singularly or in combination, constitute gross negligence and were the

13

proximate cause of the damages and injuries sustained by Plaintiffs. Leeco's acts and/or omissions, when viewed objectively from its standpoint at the time such acts and/or omissions occurred, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. Leeco had actual, subjective awareness of the risk, but proceeded with conscious indifference to the rights, safety, and welfare of Plaintiffs.

## VIII.   CAUSES OF ACTION AGAINST D & F EQUIPMENT SALES, INC., AND ARKANSAS MACHINE WORKS, LLC.

A. STRICT PRODUCTS LIABILITY

59.     AWM designed and manufactured body armor with a defective and unreasonably dangerous condition to an extent beyond which would be contemplated by an ordinary user of the MIL-A-46100 steel. The defective and unreasonably dangerous condition of the MIL-A-46100 steel was a producing cause of the damages and injuries sustained by Plaintiffs, thus rendering AMW strictly liable.

60.     The MIL-A-46100 steel and body armor were unreasonably dangerous as designed, manufactured, taking into consideration the utility of the MIL-A-46100 steel, and the risk involved in its foreseeable use.

61.     The unreasonably dangerous design, manufacturing, of the MIL-A-46100 steel body armor was a producing cause of the damages and injuries sustained by Plaintiffs.

62.     The acts and/or omissions of Defendants AMW were negligent in the following particulars:

        a.   Designing and manufacturing MIL-A-46100 steel body armor that failed to comply with local, state, and federal regulations.

14

    b.   Designing, manufacturing, MIL-A-46100 steel body armor that failed to comply with industry standards.

    c.   Designing and manufacturing MIL-A-46100 steel body armor that was unreasonably dangerous.

63.    The MIL-A-46100 steel body armor was in substantially the same condition at the time of the incident as it was when it was placed into the stream of commerce.

64.    At the time the MIL-A-46100 steel body armor left the control of AMW, there were safer alternative design(s). The risk, danger, and severity of the damages to Plaintiffs could have been avoided, reduced, or prevented had the safer alternative design(s) been adopted or used.

65.    At the time of the design, manufacturing, marketing, or the sale of the MIL-A-46100 steel body armor, adoption or use of a safer alternative design(s) were reasonably or feasibly available to AMW. AMW did not adopt or use the safer alternative design(s). AMW's failure to adopt or use a safer alternative design(s) was reckless, willful, wanton, heedless, and in flagrant disregard to public safety. AWM's negligence and gross negligence was a proximate cause of the damages and injuries sustained by Plaintiffs. As a result, Plaintiffs are entitled to recover actual and punitive damages and/or exemplary damages in an amount to be determined by the trier of fact.

B. <u>STRICT LIABILITY: MANUFACTURING DEFECT</u>

66.    The MIL-A-46100 steel body armor worn by the now deceased was originally designed and manufactured by AMW. At the time the MIL-A-46100 steel body was cut and bent by AMW, AMW was in the business of designing, manufacturing, and/or

otherwise placing MIL-A-46100 steel body armor into the stream of commerce for the purpose of being sold by BDBA as Levl-4 body armor.

67.    The MIL-A-46100 steel body armor reached Plaintiffs in the condition expected and intended by AMW. Plaintiffs used the MIL-A-46100 steel body armor for its intended and foreseeable purpose. When the MIL-A-46100 steel body armor left the control of AMW, defects in MIL-A-46100 Steel, due to cutting and bending by AMW, rendered the MIL-A-46100 steel body armor defective and unreasonably dangerous in that the MIL-A-46100 steel body armor was prone to fail at stopping high speed bullets upon impact, specifically .556/.223 bullets.

68.    The Defective manufacturing, cutting, and bending of the MIL-A-46100 steel body armor directly and proximately caused the damages to Plaintiffs.

C. NEGLIGENCE

69.    Defendant, AMW, committed acts of omission and commission, which collectively and severally constituted negligence. AMW had a duty to exercise ordinary care, meaning that degree of care that would be used by a company or ordinary prudence under the same or similar circumstances, and AMW breached that duty. Specifically, AMW breached their duty in one or more of the following ways:

   a.   Failing to properly design the MIL-A-46100 steel body armor;

   b.   Failing to properly manufacture the MIL-A-46100 steel into body armor;

   c.   Failing to adequately test the MIL-A-46100 steel.

   d.   Failing properly cut the MIL-A-Steel into body armor;

   e.   Failing to properly bend the MIL-A-Steel into body armor;

      f.   In damaging the MIL-A-46100 steel rendering it unsafe for its intended purpose.

70.    These breaches, among others, constituted negligence. Such negligence was a proximate cause of the occurrence in question and of the damages and injuries sustained by Plaintiffs.

### D. GROSS NEGLIGENCE

71.    Plaintiffs allege that all acts, conduct, and omissions on the part of Defendant AMW, taken singularly or in combination, constitute gross negligence and were the proximate cause of the damages and injuries sustained by Plaintiffs. AMW acts and/or omissions, when viewed objectively from its standpoint at the time such acts and/or omissions occurred, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. AMW had actual, subjective awareness of the risk, but proceeded with conscious indifference to the rights, safety, and welfare of Plaintiffs.

### IX.    CAUSE OF ACTION AGAINST JAMES TAMES D/B/A BLACK DIAMOND BODY ARMOR AND BLACK DIAMOND JA, LC.

### A. STRICT PRODUCTS LIABILITY

72.    The body armor made the basis of this lawsuit was designed, marketed, and sold by BDBA using MIL-A-46100 steel purchased from Leeco that had been sourced from Nucor, for the specific purpose of stopping high speed projectiles, specifically .556/.223 bullets, in a defective and unreasonably dangerous condition to an extent beyond which would be contemplated by an ordinary user of the MIL-A-46100 steel body armor. The defective and unreasonably dangerous condition of the MIL-A-46100 steel body armor was a producing

cause of the damages and injuries sustained by Plaintiffs, thus rendering BDBA strictly liable.

73. The MIL-A-46100 steel body armor was unreasonably dangerous as designed, manufactured, marketed, and sold taking into consideration the utility of the MIL-DTL-46100 steel body armor, and the risk involved in its foreseeable use.

74. The unreasonably dangerous design, manufacturing, marketing, and sale of the MIL-DTL-46100 steel body armor was a producing cause of the damages and injuries sustained by Plaintiffs.

75. The acts and/or omissions of Defendants BDBA were negligent in the following particulars:

    a. Design, manufacturing, marketing, and selling MIL-A-46100 steel body armor that failed to comply with local, state, and federal regulations.

    b. Designing, manufacturing, marketing and selling MIL-A-46100 steel body armor that failed to comply with industry standards.

    c. Designing, manufacturing, marketing, and selling MIL-A-46100 steel body armor that was unreasonably dangerous.

76. The MIL-A-46100 steel body armor was in substantially the same condition at the time of the incident as it was when it was placed into the stream of commerce and when it left Leeco's and ASW's custody.

77. At the time the MIL-A-46100 steel body armor left the control of BDBA, there were safer alternative design(s). The risk, danger, and severity of the damages to Plaintiffs could have been avoided, reduced, or prevented had the safer alternative design(s) been adopted or used.

78.     At the time of the design, manufacturing, marketing, or the sale of the MIL-A-46100 steel body armor, adoption or use of a safer alternative design(s) were reasonably or feasibly available to BDBA. BDBA did not adopt or use the safer alternative design(s). BDBA's failure to adopt or use a safer alternative design(s) was reckless, willful, wanton, heedless, and in flagrant disregard to public safety. BDBA's negligence and gross negligence was a proximate cause of the damages and injuries sustained by Plaintiffs. As a result, Plaintiffs are entitled to recover actual and punitive damages and/or exemplary damages in an amount to be determined by the trier of fact.

B. STRICT LIABILITY: MANUFACTURING DEFECT

79.     The MIL-A-46100 steel body armor worn by the now deceased was originally designed, manufactured, and sold by BDBA. At the time the MIL-A-46100 steel body armor was sold, BDBA was in the business of designing, manufacturing, selling, and/or otherwise placing MIL-A-46100 steel body armor into the stream of commerce for the purpose of being used as body armor.

80.     The MIL-A-46100 steel body armor reached Plaintiffs in the condition expected and intended by BDBA. Plaintiffs used the MIL-A-46100 steel body armor for its intended and foreseeable purpose. When the MIL-A-46100 steel body amror left the control of BDBA, defects in their manufacturing rendered the MIL-A-46100 steel body armor defective and unreasonably dangerous in that the MIL-A-46100 steel was prone to fail at stopping high speed bullets upon impact, specifically .556/.223 bullets.

81.     The Defective manufacturing of the MIL-A-46100 steel body armor directly and proximately caused the damages to Plaintiffs.

### C. STRICT LIABILITY: MARKETING DEFECT/FAILURE TO WARN

82.     Defendant BDBA failed to give adequate and proper warnings and instructions regarding the dangers of the MIL-A-46100 steel body armor which rendered the MIL-A-46100 steel body armor defective and unreasonably dangerous and was a producing cause of the damages and injuries sustained by Plaintiffs. Specifically, Defendants' failure to warn of the ductile limitations of the MIL-A-46100 steel body armor was a proximate cause of the damages and injuries sustained by Plaintiffs.

### D. NEGLIGENCE

83.     Defendant, BDBA, committed acts of omission and commission, which collectively and severally constituted negligence. BDBA had a duty to exercise ordinary care, meaning that degree of care that would be used by a company or ordinary prudence under the same or similar circumstances, and BDBA breached that duty. Specifically, BDBA breached their duty in one or more of the following ways:

    a.   Failing to properly design the MIL-A-46100 steel body armor;

    b.   Failing to properly manufacture the MIL-A-46100 steel body armor;

    c.   Failing to properly market the MIL-A-46100 steel body armor;

    d.   Failing to adequately test the MIL-A-46100 steel body armor;

84.     These breaches, among others, constituted negligence. Such negligence was a proximate cause of the occurrence in question and of the damages and injuries sustained by Plaintiffs.

### E. GROSS NEGLIGENCE

85.     Plaintiffs allege that all acts, conduct, and omissions on the part of Defendant BDBA, taken singularly or in combination, constitute gross negligence and were the

proximate cause of the damages and injuries sustained by Plaintiffs. BDBA's acts and/or omissions, when viewed objectively from its standpoint at the time such acts and/or omissions occurred, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. BDBA had actual, subjective awareness of the risk, but proceeded with conscious indifference to the rights, safety, and welfare of Plaintiffs.

## X.     CAUSE OF ACTION AGAINST TUFF COAAT LLC D/B/A BULLET LINER NWA, LLC

A. NEGLIGENCE

86.    Defendant, BLNWA, committed acts of omission and commission, which collectively and severally constituted negligence. BLNWA had a duty to exercise ordinary care, meaning that degree of care that would be used by a company or ordinary prudence under the same or similar circumstances, and BLNWA breached that duty. Specifically, BDBA breached their duty in one or more of the following ways:

    a.    Failing to properly apply the spray coating to the body armor thus rendering the spray coating useless for its intended purpose;

    b.    Failing to adequately test spray coating applied to the body armor to ensure it was capable of stopping fragmentation from entering Parker Lynch's body;

87.    These breaches, among others, constituted negligence. Such negligence was a proximate cause of the occurrence in question and of the damages and injuries sustained by Plaintiffs.

B. GROSS NEGLIGENCE

88.    Plaintiffs allege that all acts, conduct, and omissions on the part of Defendant BLNWA, taken singularly or in combination, constitute gross negligence and were the

21

proximate cause of the damages and injuries sustained by Plaintiffs. BLNWA'S acts and/or omissions, when viewed objectively from its standpoint at the time such acts and/or omissions occurred, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. BLNWA had actual, subjective awareness of the risk, but proceeded with conscious indifference to the rights, safety, and welfare of Plaintiffs.

## XI.   CAUSE OF ACTION AGAINST NUCOR CORPORATION

A. STRICT LIABILITY

89.   This is a product defect case with respect to the quality, grade, and strength of the MIL-A-46100 steel.

90.   The MIL-A-46100 steel was designed, manufactured, marketed and sold by Nucor for the specific purpose of stopping high speed projectiles, specifically .556/.223 bullets, in a defective and unreasonably dangerous condition to an extent beyond which would be contemplated by an ordinary user of the MIL-A-46100 steel. The defective and unreasonably dangerous condition of the MIL-A-46100 steel was a producing cause of the damages and injuries sustained by Plaintiffs, thus rendering Nucor strictly liable.

91.   The MIL-A-46100 steel was unreasonably dangerous as designed, manufactured, marketed, and sold, taking into consideration the utility of the MIL-DTL-46100 steel, and the risk involved in its foreseeable use.

92.   The unreasonably dangerous design, manufacturing, marketing, and sale of the MIL-DTL-46100 steel was a producing cause of the damages and injuries sustained by Plaintiffs.

93.     The acts and/or omissions of Defendant Nucor were negligent in the following particulars:

a. Design, manufacturing, marketing, and selling MIL-A-46100 steel that failed to comply with local, state, and federal regulations.

b. Designing, manufacturing, marketing and selling MIL-A-46100 steel that failed to comply with industry standards.

c. Designing, manufacturing, marketing, and selling MIL-A-46100 steel that was unreasonably dangerous.

94.     The MIL-A-46100 steel was in substantially the same condition at the time of the incident as it was when it was placed into the stream of commerce.

95.     At the time the MIL-A-46100 steel left the control of Nucor, there were safer alternative design(s). The risk, danger, and severity of the damages to Plaintiffs could have been avoided, reduced, or prevented had the safer alternative design(s) been adopted or used.

96.     At the time of the design, manufacturing, marketing, or the sale of the MIL-A-46100 steel, adoption or use of a safer alternative design(s) were reasonably or feasibly available to Nucor. Nucor did not adopt or use the safer alternative design(s). Nucor's failure to adopt or use a safer alternative design(s) was reckless, willful, wanton, heedless, and in flagrant disregard to public safety. Nucor's negligence and gross negligence was a proximate cause of the damages and injuries sustained by Plaintiffs. As a result, Plaintiffs are entitled to recover actual and punitive damages and/or exemplary damages in an amount to be determined by the trier of fact.

B. STRICT LIABILITY: MANUFACTURING DEFECT

97.     The MIL-A-46100 steel worn by the now deceased was originally designed, manufactured, and sold by Nucor. At the time the MIL-A-46100 steel was sold, Nucor was in the business of designing, manufacturing, selling, and/or otherwise placing MIL-A-46100 steel into the stream of commerce for the purpose of being used as body armor.

98.     The MIL-A-46100 steel and body armor reached Plaintiffs in the condition expected and intended by Nucor. Plaintiffs used the MIL-A-46100 steel and body armor for its intended and foreseeable purpose. When the MIL-A-46100 steel left the control of Nucor, defects in their manufacturing rendered the MIL-A-46100 steel defective and unreasonably dangerous in that, among other things, the MIL-A-46100 steel was prone to fail at stopping high speed bullets upon impact, specifically .556/.223 bullets.

99.     The Defective manufacturing of the MIL-A-46100 steel directly and proximately caused the damages to Plaintiffs.

C. STRICT LIABILITY: MARKETING DEFECT/FAILURE TO WARN

100.    Defendant Nucor failed to give adequate and proper warnings and instructions regarding the dangers of the MIL-A-46100 steel which rendered the MIL-A-46100 steel defective and unreasonably dangerous and was a producing cause of the damages and injuries sustained by Plaintiffs. Specifically, Defendants' failure to warn of the ductile limitations of the MIL-A-46100 steel was a proximate cause of the damages and injuries sustained by Plaintiffs.

D. NEGLIGENCE

101.    Defendant, Nucor, committed acts of omission and commission, which collectively and severally constituted negligence. Nucor had a duty to exercise ordinary care, meaning

that degree of care that would be used by a company or ordinary prudence under the same or similar circumstances, and Nucor breached that duty. Specifically, Nucor breached their duty in one or more of the following ways:

     a.  Failing to properly design the MIL-A-46100 steel;

     b.  Failing to properly manufacture the MIL-A-46100 steel;

     c.  Failing to properly market the MIL-A-46100 steel;

     d.  Failing to adequately test the MIL-A-46100 steel.

     e.  Failing to adequately warn of the ductile limitations of the MIL-A-46100 steel.

102.    These breaches, among others, constituted negligence. Such negligence was a proximate cause of the occurrence in question and of the damages and injuries sustained by Plaintiffs.

E. GROSS NEGLIGENCE

103.    Plaintiffs allege that all acts, conduct, and omissions on the part of Defendant Nucor, taken singularly or in combination, constitute gross negligence and were the proximate cause of the damages and injuries sustained by Plaintiffs. Nucor's acts and/or omissions, when viewed objectively from its standpoint at the time such acts and/or omissions occurred, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. Nucor had actual, subjective awareness of the

risk, but proceeded with conscious indifference to the rights, safety, and welfare of Plaintiffs.

## XII.   CAUSES OF ACTION AGAINST ALL DEFENDANTS

A. WRONGFUL DEATH

104.    Plaintiffs James Lynch and Shannon Lynch are the statutory beneficiaries of the decedent, a person, alive at the time of Defendants' negligence, which is a proximate cause of injuries and death, for which decedent would have a right of recovery had he survived. As a result of decedent's injuries and death, Plaintiffs, James Lynch and Shannon Lynch have likewise suffered damages.

B. TEXAS SURVIVAL STATUTE

105.    Plaintiffs are the legal representatives of the decedent's estate. Decedent had a cause of action for personal injury against Defendants before death. Decedent would have been entitled to bring a claim against Defendants should she have lived. The Defendants' wrongful act caused the decedents injuries.

## XIII.   COMPARATIVE NEGLIGENCE

106.    Nothing Plaintiffs did or failed to do caused or in any way contributed to the cause of the occurrence in question. The injuries and damages complained of herein were proximately caused as a result of Defendants' conduct. In other words, none of Plaintiffs' actions or inactions contributed to the failure of the MIL-DTL-46100 steel and body armor made the basis of this lawsuit.

## XIV.  DAMAGES

A. PARKER LYNCH

107.     Parker Lynch was a young man just entering the prime of his life. He had a bright future and the chance to attend college and finish his higher education. He lost his life as a result of the failed MIL-DTL-46100 steel and body armor made the basis of this lawsuit. In addition to his loss of life, Parker Lynch suffered extreme pain and fear as he bled out and watched his life slip away.

108.     In addition to loss of life, Parker Lynch also suffered:

        a.  Reasonable and necessary medical expenses;

        b.  Pain and suffering;

        c.  Mental anguish;

        d.  Loss of future earnings.

B. JAMES LYNCH

109.     James Lynch lost the love, companionship and everyday support given to him by his son. James Lynch also claims all damages his deceased son would be entitled to recover under Plaintiffs' wrongful death and survivorship actions.

C. SHANNON LYNCH

110.     Shannon Lynch lost the love, companionship and everyday support given to her by her son. Shannon Lynch also claims all damages her deceased son would be entitled to recover under Plaintiffs' wrongful death and survivorship actions.

## XV.  CONDITIONS PRECEDENT

111.     All conditions precedent to Plaintiffs' claims for relief have been performed or have occurred.

## XVI.   **JURY DEMAND**

112.    Plaintiffs herby respectfully request a trial by jury.

## XVII.  **REQUEST FOR DISCLOSURES**

113.    In accordance with Rule 194 of the Texas Rules of Civil Procedure, Plaintiffs request that all Defendants, disclose, within 50 days of service of this request, the information described therein.

## XVIII. **ATTORNEY FEES**

114.    Plaintiffs respectfully ask that they be awarded their reasonable and necessary attorney fees.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully pray that all named Defendants be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for Plaintiffs against all named Defendants for all damages requested hereinabove, in an amount in excess of the minimum jurisdictional limits of the Court, and any such other and further relief to which Plaintiffs may be entitled at law or in equity, whether pled or unpled.

[*Signatures on next page*]

Respectfully submitted,

**ABRAHAM, WATKINS, NICHOLS, AGOSTO, AZIZ & STOGNER**

*/s/Muhammad S. Aziz*
MUHAMMAD S. AZIZ
State Bar No. 24043538
800 Commerce Street
Houston, Texas 77002
(713) 222-7211 – Telephone
(713) 225-0827 – Facsimile
maziz@awtxlaw.com

**-and-**

**MAVERICK RAY &ASSOCIATES**

/s/ Matthew M. Marzak
Maverick J. Ray
State Bar No. 24080451
maverick@maverickraylaw.com
Matthew M. Marzak
State Bar No. 24098048
matthew@maverickraylaw.com
811 West 24th Street,
Houston, Texas 77008
Telephone:  281-947-2007
Facsimile:  713-714-2225

**-and-**

**ROBERT STEM, JR.**

*/s/ Robert Stem, Jr.*
ROBERT STEM, JR.
State Bar No. 24068667
801 Washington Ave., Ste. 300
Waco, Texas 76701
(254) 776-0554
(254) 442-7937 – Facsimile
robert@rstemlaw.com

**ATTORNEYS FOR PLAINTIFFS SHANNON LYNCH individually AND on behalf of PARKER LYNCH, AND his estate, AND JAMES LYNCH**

29